UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YOLANDA LITTLEJOHN,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>*Defendant*. | Civil Action No. 25 - 850 (SLS)<br>Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

Yolanda Littlejohn works for the District of Columbia Department of Human Services (DCDHS). She brought this lawsuit under the Family Medical Leave Act (FMLA), the D.C. Family Medical Leave Act (DCFMLA), and the D.C. Human Rights Act (DCHRA) alleging that DCDHS failed to timely process her leave and telework requests. The District of Columbia has moved to dismiss Ms. Littlejohn's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Although the Court sympathizes with the frustrating delays Ms. Littlejohn has experienced, it ultimately concludes that her Amended Complaint must be dismissed.

**BACKGROUND**

**A.      Statutory Background**

The FMLA entitles eligible employees to up to "12 workweeks of leave during any 12-month period" for specified family or medical reasons, including "a serious health condition that makes the employee unable to perform" their work. 29 U.S.C. § 2612(a). "Under the FMLA, an eligible employee is an employee of a covered employer who has been employed for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of the leave." *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 90–91 (D.D.C. 2014);

29 U.S.C. § 2611(2)(A). "Employers may not 'interfere with, restrain, or deny the exercise of FMLA rights[.]'" *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1375 (D.C. Cir. 2020) (quoting 29 U.S.C. § 2615(a)(1)).

"Employees covered by the DCFMLA are entitled to 16 workweeks of 'family leave' and 16 workweeks of 'medical leave' during any 24-month period." *Holmes v. Univ. of the District of Columbia*, 244 F. Supp. 3d 52, 58 (D.D.C. 2017) (quoting D.C. Code §§ 32–502(a), 32–503(a)). "Medical leave is available to any employee who 'becomes unable to perform the functions of the employee's position because of a serious health condition.'" *Id.* (quoting D.C. Code § 32–503(a)). Like the FMLA, the DCFMLA "makes it 'unlawful for any person to interfere with, restrain, or deny the exercise of . . . any right provided by' the Act." *Id.* (quoting D.C. Code § 32–507(a)). The DCFMLA has a one-year statute of limitations that generally begins to run "after the occurrence or discovery of the alleged violation." *See* D.C. Code § 32–510(b).

The DCHRA prohibits covered employers from discriminating against any individual "wholly or partially . . . based upon the actual or perceived . . . disability . . . of any individual[.]" D.C. Code § 2–1402.11(a)(1). The D.C. Court of Appeals' construction of the DCHRA has "effectively incorporate[d] judicial construction of related anti-discrimination provisions of the" federal Americans with Disabilities Act (ADA). *Hunt v. District of Columbia*, 66 A.3d 987, 990 (D.C. 2013). Under both statutes, an employer has a duty to "make reasonable accommodation to the known physical or mental limitations of a disabled employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *Id.* at 991 (cleaned up) (quoting *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994)).

**B.     Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Amended Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Ms. Littlejohn has worked for the District of Columbia Department of Human Services (DCDHS) since January 2016. *See* Am. Compl. ¶ 6, ECF No. 1-2. In April 2023, Ms. Littlejohn submitted a request for job-protected leave under the FMLA for rotator-cuff surgery planned that same month. *Id.* ¶ 7. DCDHS[1] was "supposed to" process her application within fifteen days, but it failed to do so. *Id.* ¶¶ 8–9. Ms. Littlejohn nevertheless underwent the rotator-cuff surgery, and she was out of work from an unspecified date in April until June 6, 2023. *See id.* ¶ 10. Because her FMLA-leave request had not been approved by the date of her surgery, Ms. Littlejohn used her "annual and sick leave" to cover that period. *Id.* ¶ 11.

In August 2023, Ms. Littlejohn was diagnosed with breast cancer and required surgery. *Id.* ¶ 12. Her "medical provider" recommended leave from work between October 2 and November 17, 2023, to recover from the surgery. *Id.* ¶ 15. Accordingly, Ms. Littlejohn submitted another FMLA-leave request that August. *Id.* ¶ 13. She underwent breast-cancer related surgeries on October 3 and October 23, 2023. *Id.* ¶ 17. But DCDHS again failed to process Ms. Littlejohn's request, causing her to again use her annual and sick leave. *Id.* ¶ 16. Ms. Littlejohn was absent from work from October 2 to October 30, 2023. *Id.* ¶ 19. But because she had used her annual and sick leave earlier in the year, and with "no response" regarding her FMLA leave, Ms. Littlejohn "reported to work earlier than recommended" on October 30, 2023. *Id.* ¶ 18.

In December 2023, DCDHS approved Ms. Littlejohn's April 2023 FMLA-leave request, retroactively applying it "from the period of April 2023 to April 2024 for ongoing treatment and evaluations." *Id.* ¶¶ 21–22. It also approved Ms. Littlejohn "for 100% telework as an

---

[1] Ms. Littlejohn's Amended Complaint variously attributes conduct to "The District," "The Agency," and "DC Human Resources." *E.g.*, Am. Compl. ¶¶ 9, 14, 21. Because her Complaint identifies DCDHS as her employer, the Court uses that term to encompass all relevant components of the District of Columbia.

3

accommodation based on her recovery from breast cancer," with an end date of July 1, 2024. *Id.* ¶ 25. But it "denied [her] requested FMLA from October to recover from breast cancer surgeries." *Id.* ¶ 23. DCDHS did not adjust Ms. Littlejohn's spent annual and sick leave to account for the leave she had expended. *Id.* ¶ 24.

The Complaint is less clear about what happened in 2024. On February 28, 2024, Ms. Littlejohn's "medical provider" told her that she would need a left breast mastectomy. *Id.* ¶ 27. Apparently that same day, DCDHS "informed Ms. Littlejohn that she was required to return to work on March 4, 2024[,] because she did not have job protected leave for mastectomy surgery." *Id.* ¶ 30. The Amended Complaint does not state whether Ms. Littlejohn being absent in February 2024 (and therefore being required to "return") was because of the left breast mastectomy or for another reason. The Amended Complaint also does not explicitly state that Ms. Littlejohn submitted an FMLA-leave request for the mastectomy. Although it implies that she did, the fate of that request is unclear—the Amended Complaint says both that (1) "Ms. Littlejohn reported to work in an unhealthy, ill-advised condition because [DCDHS] failed to approve FMLA," *id.*; and (2) that as of the filing of the Amended Complaint, "Ms. Littlejohn's FMLA has not been approved for her mastectomy," *id.* ¶ 35.

In "early 2024," DCDHS also emailed Ms. Littlejohn and told her that she would need to reapply for her telework accommodation. *Id.* ¶ 26. She submitted that request in June 2024, explaining that her "medical provider" had recommended a one-year accommodation. *See id.* ¶ 31. DCDHS was required "[b]y agency rule" to respond within five days, but it failed to do so. *Id.* Instead, it approved the request in September 2024 "and backdated it for July of 2024." *Id.* The approval was only for six months. *Id.*

4

In July 2024, Ms. Littlejohn underwent a reconstruction surgery in connection with her breast cancer treatment. *Id.* ¶ 32. While staying in the hospital, Ms. Littlejohn "continued to reach out to [DCDHS] concerning medical leave." *Id.* ¶ 33. When DCDHS informed Ms. Littlejohn that she no longer had annual or sick leave, Ms. Littlejohn filed another request for FMLA leave. *Id.* "In response," the Complaint alleges, DCDHS "informed her that she would need to renew her ADA accommodation to telework." *Id.* ¶ 34.

### C. Procedural Background

Ms. Littlejohn sued the District of Columbia in January 2025. Compl., ECF No. 1-2. In March 2025, she filed an Amended Complaint, alleging that DCDHS violated the FMLA, DCFMLA, and DCHRA. *See generally* Am. Compl. Soon after, the District of Columbia removed the action to this Court. Notice of Removal, ECF No. 1. In April 2025, the District of Columbia moved to dismiss Ms. Littlejohn's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss, ECF No. 9. That motion is fully briefed and ripe for review. *See* Opp'n, ECF No. 11; Reply, ECF No. 12.

## LEGAL STANDARD

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

### A.     FMLA & DCFMLA Claims

Ms. Littlejohn's Amended Complaint alleges that DCDHS unlawfully interfered with her right to take leave under the FMLA and DCFMLA. "To prevail on an FMLA interference claim, a plaintiff must show (1) employer conduct that reasonably tends to interfere with, restrain, or deny the exercise of FMLA rights, and (2) prejudice arising from the interference."[2] *Waggel*, 957 F.3d at 1376. "Courts interpret the FMLA and the DCFMLA similarly, and a plaintiff must make the same showing to establish an interference claim under the DCFMLA." *Murphy v. District of Columbia*, 590 F. Supp. 3d 175, 185 (D.D.C. 2022) (cleaned up).

As relevant here, "[t]he FMLA protects an employee's rights to take guaranteed leave." *Waggel*, 957 F.3d at 1377. "An employer action with a reasonable tendency to interfere with, restrain, or deny the exercise of or attempt to exercise an FMLA right may give rise to a valid interference claim . . . even where the action fails to actually prevent such exercise or attempt." *Sparrow v. Wash. Metro. Area Transit Auth.*, No. 22-cv-2216, 2024 WL 3551962, at *15 (D.D.C. July 26, 2024) (cleaned up). And prejudice cognizable under the FMLA "occurs only when the employee has lost compensation or benefits by reason of the violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status remediable through equitable relief." *Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 39 (D.D.C. 2011).

---

[2] "The plaintiff is required to demonstrate prejudice because the statutory cause of action, under both the federal and local statute, provides for compensatory damages and injunctive relief, but does not provide for punitive damages." *Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 317 n.22 (D.D.C. 2015).

The District of Columbia argues that the Amended Complaint fails to sufficiently allege that DCDHS denied or interfered with Ms. Littlejohn's rights under the FMLA or DCFMLA, or that any conduct by DCDHS prejudiced Ms. Littlejohn. Mot. Dismiss 7–8. The Court will assess each of Ms. Littlejohn's FMLA-leave requests sequentially.

*April 2023 Request*: Ms. Littlejohn first requested FMLA leave in April 2023. Am. Compl. ¶ 7. She contends that DCDHS's failure to process her leave request until the retroactive approval in December 2023 interfered with her right to take FMLA leave. Opp'n 3. Courts have recognized that unlawful interference "may occur where the employer fails to notify the employee that his or her leave is designated as FMLA or DCFMLA leave." *Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 317 (D.D.C. 2015); *Murphy*, 590 F. Supp. 3d at 188 (collecting cases). This case, however, involves a long delay in processing, not a failure to process a leave request outright. Although the Court does not doubt that long delays in some circumstances may constitute interference, *see* 29 C.F.R. § 825.300(d)(1) (providing that an employer that has adequate information to process an FMLA request must do so "within five business days absent extenuating circumstances"), Ms. Littlejohn cites no court finding interference where an employer delayed processing a leave request but ultimately approved it retroactively, Opp'n 3; *see* 29 C.F.R. § 825.301(d) ("[T]he employer may retroactively designate leave as FMLA leave with appropriate notice to the employee . . . provided that the employer's failure to timely designate leave does not cause harm or injury to the employee."). Here, however, the Court need not decide whether Ms. Littlejohn has sufficiently alleged that DCDHS's conduct interfered with her FMLA and DCFMLA rights. That is because the Amended Complaint does not sufficiently allege facts supporting that Ms. Littlejohn was prejudiced by the delay. Thus, the Court assumes without deciding that DCDHS's delay interfered with Ms. Littlejohn's FMLA and DCFMLA rights.

Ms. Littlejohn argues that DCDHS's conduct prejudiced her because it "forced" her to use her annual and sick leave.[3] Opp'n 4. But being required to use paid time off in lieu of FMLA leave does not itself demonstrate prejudice, as an "employer may require the employee to substitute accrued paid leave for unpaid FMLA leave." 29 C.F.R. § 825.207(a). In a case like this one, another court in this District persuasively reasoned:

> By taking her personal sick and annual leave balance . . . , the plaintiff received monetary compensation for her leave. Had she taken her FMLA leave, which would have been without pay, . . . the plaintiff would not have received any compensation. Thus, the District's alleged interference did not 'cause[] [the plaintiff any] loss of compensation.' . . . And, even if a jury concluded that the plaintiff suffered a loss in benefits, . . . this loss in benefits would not be 'compensable through monetary relief, such as the value of each hour of leave [the plaintiff] unnecessarily used or equitable relief[,] such as the restoration of the plaintiff's annual sick and leave hours,' . . . without the plaintiff having to reimburse the District for the compensation she received for taking her paid annual and sick leave. Otherwise, the plaintiff would receive a windfall in regards to the amount of compensation she was entitled to receive—if awarded monetary relief in the value of the hours used, the additional compensation she would receive, and if awarded equitable relief through the restoration of hours used, the money already received for using the hours and the added benefit of reusing those restored hours.

*Lovely-Coley v. District of Columbia*, 255 F. Supp. 3d 1, 12 (D.D.C. 2017) (first quoting *Roseboro v. Billington*, 606 F. Supp. 2d 104, 112 (D.D.C. 2009); and then quoting *Lovely-Coley v. District of Columbia*, 191 F. Supp. 3d 20, 25 (D.D.C. 2016)). Here too, Ms. Littlejohn's use of annual and sick leave gave her more than what she was entitled to under the FMLA: she got both the time off requested in April 2023 *and* compensation. *Cf. Dougherty v. CNN*, 396 F. Supp. 3d 84, 111–12

---

[3] As an initial matter, the Amended Complaint does not explain how DCDHS's failure to timely process Ms. Littlejohn's FMLA-leave request *forced* her to use her annual and sick leave. It does not state, for example, that Ms. Littlejohn believed that her job would be at risk if she took unpaid leave without it having been approved as FMLA leave. In its Reply, the District of Columbia touches on this, noting that Ms. Littlejohn "does not allege that the District coerced or compelled her use of paid leave" and arguing that she merely "elected to use available paid leave because of administrative delays." Reply 5. Because it makes no difference here whether Ms. Littlejohn's use of paid leave was voluntary or involuntary, the Court takes Ms. Littlejohn's framing as given.

(D.D.C. 2019) ("The failure to designate the leave as DC FMLA leave did not cause Dougherty harm at the time, because he was able to stay out of work for much longer than the 16 weeks allowed under the DC FMLA and was still able to return to work afterwards."). Accordingly, the Amended Complaint fails to allege that DCDHS's processing delay prejudiced Ms. Littlejohn.

Ms. Littlejohn makes three arguments to the contrary, none of which are persuasive.[4] First, she observes that by regulation, "[w]hen an employee chooses, or an employer requires, substitution of accrued paid leave, the employer must inform the employee that the employee must satisfy any procedural requirements of the paid leave policy only in connection with the receipt of such payment." Opp'n 4–5 (quoting 29 C.F.R. § 825.207(a)). She suggests that she was prejudiced because DCDHS did not notify her that she "satisfie[d] [DCDHS's] procedural requirement for unpaid leave." Opp'n 5. Setting aside that the cited regulation does not require such notice, this argument merely repackages the allegation that DCDHS failed to timely process Ms. Littlejohn's leave request—it does not explain how she suffered a remediable loss of compensation or benefits.

Second, Ms. Littlejohn contends that she "lost the benefit" of her paid leave "to use in future cancer treatment," and that she "lost the monetary value of that paid leave if she opted to not use it for future treatment." Opp'n 5. But the Amended Complaint does not allege that Ms. Littlejohn's use of paid-leave time resulted in less overall leave time than statutorily required or in less money for Ms. Littlejohn—after all, FMLA leave is unpaid. And as discussed above, "even if a jury concluded that the plaintiff suffered a loss in benefits, . . . this loss in benefits would not be 'compensable through monetary relief, such as the value of each hour of leave [the plaintiff]

---

[4] Ms. Littlejohn also argues that "under the D.C. FMLA, an employee may use paid leave but cannot be required to use the paid leave before beginning unpaid leave." Opp'n 5. But the provision she cites, D.C. Code § 32–502(e)(2), says no such thing. It says that "[a]ny paid . . . leave provided by an employer that the employee elects to use for family leave shall count against the 16 workweeks of allowable family leave provided [by the DCFMLA]." D.C. Code § 32–502(e)(2).

9

unnecessarily used or equitable relief[,] such as the restoration of the plaintiff's annual sick and leave hours,' . . . without the plaintiff having to reimburse the District for the compensation she received for taking her paid annual and sick leave." *Lovely-Coley*, 255 F. Supp. 3d at 12 (quoting *Lovely-Coley*, 191 F. Supp. 3d at 25).

Third, Ms. Littlejohn argues that her use of paid leave "continued to affect her ability to take any job-protected leave for future treatments" because she later "had to undergo cancer treatment without security of job protected leave." Opp'n 5–6. This is beside the point. If DCDHS interfered with Ms. Littlejohn's right to take job-protected leave for cancer treatment, it might be liable under the FMLA for that interference. But just because DCDHS may have violated the FMLA on those later occasions does not mean that Ms. Littlejohn's earlier use of paid leave prejudiced her. Thus, Ms. Littlejohn's April 2023 FMLA request cannot support her FMLA or DCFMLA claims.

*August 2023 Request*: Ms. Littlejohn made her second FMLA-leave request in August 2023 in connection with a breast cancer surgery. Am. Compl. ¶ 12–13. She again relies on the delay between her request and the December 2023 retroactive leave approval to demonstrate unlawful interference. Opp'n 3–4. And Ms. Littlejohn further alleges that she returned to work "earlier than recommended" because she had exhausted her annual and sick leave and had yet to receive a response regarding her FMLA leave. Am. Compl. ¶ 18. That Ms. Littlejohn returned to work earlier than her doctor recommended (and ostensibly before exhaustion of FMLA-leave time) because DCDHS failed to timely process her FMLA-leave request supports that DCDHS's conduct interfered with her right to take protected leave. Still, the Court need not decide whether this suffices to show unlawful interference because the Court again concludes that the Amended Complaint fails to allege prejudice.

As before, Ms. Littlejohn identifies only her use of paid leave to demonstrate prejudice. Opp'n 4–5. And as before, that is insufficient to show prejudice. *See* 29 C.F.R. § 825.207(a); *Lovely-Coley*, 255 F. Supp. 3d at 12. She makes no attempt to show that her early return to work caused or itself qualified as prejudice. *See Badwal*, 139 F. Supp. 3d at 317. The Court therefore does not address whether an early return to work is sufficient to establish prejudice. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("[A] threadbare allegation included in [a] complaint does not help [a plaintiff]. A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005))). The August 2023 FMLA-leave request also does not support her claims.

*February 2024 Incident*: The incident in February 2024 is harder to characterize. The Amended Complaint implies, but does not explicitly allege, that Ms. Littlejohn made a request for FMLA leave for her left breast mastectomy. *See* Am. Compl. ¶ 30. And even assuming that she did, the Amended Complaint describes confusing and seemingly contradictory outcomes from that request—first, that DCDHS emailed her "that she was required to return to work on March 4, 2024, because she did not have job protected leave for mastectomy surgery," *id.*, and second, that as of the filing of the Amended Complaint, "Ms. Littlejohn's FMLA has not been approved for her mastectomy," *id.* ¶ 35. Drawing every inference in Ms. Littlejohn's favor, the Court interprets the Amended Complaint as alleging that Ms. Littlejohn made an FMLA-leave request in February 2024 and that DCDHS immediately denied that request. Because the District of Columbia does not dispute that Ms. Littlejohn was entitled to FMLA leave, the Amended Complaint sufficiently alleges that DCDHS "den[ied] the exercise of or attempt to exercise an FMLA right." *See Sparrow*, 2024 WL 3551962, at *15.

But yet again, Ms. Littlejohn's claims founder on prejudice. The Amended Complaint states that Ms. Littlejohn "reported to work in an unhealthy, ill-advised condition because the Agency failed to approve FMLA." Am. Compl. ¶ 30. Ms. Littlejohn, however, again makes no effort to explain how this goes beyond a mere denial of FMLA rights and demonstrates prejudice cognizable under the FMLA. *See Badwal*, 139 F. Supp. 3d at 317; *Bernhardt*, 923 F.3d at 179. Thus, this incident fails to support her FMLA and DCFMLA claims.

*July 2024 Request*: Finally, the Amended Complaint alleges that in July 2024, Ms. Littlejohn underwent a reconstruction surgery. Am. Compl. ¶ 32. After DCDHS informed Ms. Littlejohn that she had exhausted her annual and sick leave, she filed another FMLA-leave request. *Id.* ¶ 33. "[I]n response," DCDHS "informed her that she would need to renew her ADA accommodation to telework." *Id.* ¶ 34. It seems that Ms. Littlejohn was able to take the requested leave, and it does not seem that DCDHS delayed processing her request. These allegations do not show that DCDHS "interfered with, restrained, or denied the exercise of or the attempt to exercise, any right provided by the FMLA." *See Murphy*, 590 F. Supp. 3d at 185 (cleaned up).

\*   \*   \*

The Court is sympathetic that DCDHS's long delays in processing Ms. Littlejohn's FMLA or DCFMLA requests seriously inconvenienced her while she was dealing with severe medical conditions. But because none of Ms. Littlejohn's requests for leave support her claims under the FMLA or DCFMLA, those claims must be dismissed.[5]

---

[5] The Court need not address the District of Columbia's arguments that (1) the DCFMLA's statute of limitations bars her reliance on conduct that occurred in 2023, Mot. Dismiss 11–12; and (2) that punitive damages are not available under the FMLA and DCFMLA, Mot. Dismiss 14.

### B. DCHRA Claim

Ms. Littlejohn also claims that DCDHS failed to provide her reasonable accommodations in violation of the DCHRA. "DCHRA failure to accommodate claims 'are analyzed in the same manner as an ADA . . . claim.'" *Dougherty*, 396 F. Supp. 3d at 96 (quoting *Giles v. Transit Emps. Credit Union*, 32 F. Supp. 3d 66, 70 (D.D.C. 2014)). "[A] plaintiff 'must demonstrate by a preponderance of the evidence: (1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of h[er] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of h[er] job; and (4) that the employer refused to make such accommodations.'" *Id.* (quoting *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 133–34 (D.D.C. 2013)).

The District of Columbia argues that Ms. Littlejohn's claim fails because she does not allege that DCDHS denied her requested accommodation. The Court agrees. The Amended Complaint alleges that DCDHS approved Ms. Littlejohn "for 100% telework as an accommodation based on her recovery from breast cancer" in December 2023, with an end date of July 1, 2024. *Id.* ¶ 25. Then, in "early 2024," DCDHS emailed Ms. Littlejohn and told her that she would need to reapply for telework accommodations. *Id.* ¶ 26. She submitted that request in June 2024. *Id.* ¶ 31. In September 2024, DCDHS approved the request "and backdated it for July of 2024." *Id.* Together, these allegations indicate that Ms. Littlejohn has been consistently approved for telework since December 2023. The Amended Complaint nowhere alleges that DCDHS denied any request from Ms. Littlejohn to telework.

Ms. Littlejohn points to "the two months between the expiration of [her] original telework accommodation and the beginning of the renewed accommodation," *i.e.*, July and August 2024. Opp'n 7. According to her, "[d]uring this time, there was no accommodation in place while

13

Ms. Littlejohn recovered from cancer treatment." *Id.* But the Amended Complaint does not allege that Ms. Littlejohn was unable to work remotely during these two months. *See Hodges v. District of Columbia*, 975 F. Supp. 2d 33, 57 (D.D.C. 2013) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (cleaned up)). And DCDHS eventually retroactively approved the telework request. Am. Compl. ¶ 31. Generally, "an employer must have denied the employee's reasonable accommodation request to constitute an actionable claim." *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 223 (D.D.C. 2022) (applying an ADA precedent to the Rehabilitation Act context). Although "there are certainly circumstances in which a long-delayed accommodation could be considered unreasonable and hence actionable," "a relatively short delay of a few weeks (or even a few months) in approving a request typically does not support such a claim." *Id.* at 223–24 (cleaned up) (collecting cases). Here, where there is no indication that the two-month processing delay resulted in any change in Ms. Littlejohn's telework accommodation, the Court concludes that the Amended Complaint fails to state a violation of the DCHRA.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the District of Columbia's Motion to Dismiss, ECF No. 9.

A separate order will issue.

_____<br>
SPARKLE L. SOOKNANAN<br>
United States District Judge

Date:   February 2, 2026